NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

25-P-29                                              Appeals Court

COMMONWEALTH  vs.  JUSTIN D. GREAVES.

No. 25-P-29.

Essex.      January 6, 2026. - July 28, 2026.

Present:  Vuono, Neyman, & Sacks, JJ.

Firearms.  Controlled Substances.  Constitutional Law, Search
     and seizure, Reasonable suspicion.  Search and Seizure,
     Protective frisk, Container, Reasonable suspicion.
     Practice, Criminal, Motion to suppress.

Complaint received and sworn to in the Salem Division of
the District Court Department on July 13, 2023.

A pretrial motion to suppress evidence was heard by Leo S.
Fama, II, J., and a motion for reconsideration was considered by
him.

An application for leave to prosecute an interlocutory
appeal was allowed by Gabrielle R. Wolohojian, J., in the
Supreme Judicial Court for the county of Suffolk, and the appeal
was reported by her to the Appeals Court.

Kathryn L. Janssen, Assistant District Attorney, for the
Commonwealth.
Edward Crane for the defendant.

NEYMAN, J.  The Commonwealth appeals from a District Court judge's order allowing the defendant's motion to suppress evidence obtained from a search of the defendant's backpack. Under the test set forth in Commonwealth v. Pagan, 440 Mass. 62, 68-73 (2003), we are compelled to affirm.

Background.  We recite the facts found by the judge, supplemented by our independent review of the hotel surveillance video footage (video) entered in evidence at the hearing.  See Commonwealth v. Rainey, 491 Mass. 632, 633 (2023), quoting Commonwealth v. Yusuf, 488 Mass. 379, 381 (2021) ("we are in the same position as the . . . judge in viewing the videotape").

On July 12, 2023, at 11:57 A.M., two Salem police detectives and a Salem police lieutenant (collectively "the officers") received a dispatch "that a caller had notified dispatch" that the defendant was traveling from Lawrence to the Lafayette Hotel (hotel) in Salem with a gun and drugs.  The caller[1] further reported that the defendant was wearing a white T-shirt and was a violent person who had been stopped by police in the past.  One of the detectives used the "Waze app"[2] on his

---

[1] The caller provided a first name and telephone number to dispatch but asked to remain anonymous.  Police officers searched the caller's number and "verified that the name and number matched the caller's name and number," but did not include the caller's name in the report.

[2] Waze is a navigation software application.

cell phone to determine that it would take the defendant fifty-five minutes to travel from Lawrence to Salem. During that fifty-five-minute timeframe, the officers confirmed that the defendant did not have a license to carry a firearm, had felony convictions for drug offenses, and that the hotel expected the defendant to arrive that day. The officers stationed themselves near the hotel and awaited the defendant's arrival.

At 12:55 P.M., the officers observed the defendant arriving at the hotel "by Uber."[3] The defendant was wearing a white T-shirt and carrying a backpack along with other property, consistent with the description provided by the caller. The lieutenant followed the defendant into the lobby of the hotel and the other officers followed. The defendant was standing at the hotel's check-in area, wearing the backpack and interacting with the clerk. The lieutenant approached the defendant and informed him that police had received a call indicating that the defendant had a gun, and told the defendant to place his hands on the counter. The other officers blocked the hotel entrance. The area where the defendant, the lieutenant, and the other officers were standing was small and confined. The video shows that at one point, as the lieutenant spoke to him, the defendant

_____

[3] Uber is a software application that "matches users needing transportation with drivers willing to provide a ride." Good v. Uber Techs., Inc., 494 Mass. 116, 117 (2024).

turned his body such that he was facing the lieutenant, which positioned his backpack farther from the lieutenant and closer to a wall. The lieutenant "immediately grabbed" the defendant's hands. The defendant was asked if he had a gun and he responded that he did not.

The defendant denied the officers' request to search his backpack. The backpack was described as a "mesh style, soft sided, gym style backpack." As the video reveals, an item described as an "Xbox" video game console was partly observable from a partially open compartment of the backpack.[4] One of the officers again asked the defendant to place his hands on the counter, and at some point, one of the detectives grabbed and held the defendant's hand and arm to the counter while the lieutenant grabbed and held the defendant's other arm. The lieutenant then removed the backpack from the defendant's back and handed it to one of the detectives, who placed the backpack on the ground. The officers conducted a patfrisk of the defendant's person for weapons but did not find anything. Immediately thereafter, the detective who had been handed the backpack unzipped a compartment on the backpack, looked inside, and "rezipped that pouch." The detective then unzipped another

_____

[4] As seen in the video, the backpack had more than one compartment or "pouch," which were all zipped or substantially zipped.

pouch of the backpack, looked inside, and saw a firearm.[5]  The officers handcuffed the defendant and transported him to the police station, where they conducted a full search of the backpack.  During that search, they discovered drugs inside the backpack and seized the firearm that had previously been discovered inside.

The defendant was charged in the District Court with trafficking in cocaine (subsequently amended to possession with intent to distribute a class B substance) and various firearm offenses, including possession of a loaded firearm without a license.  The defendant filed a motion to suppress evidence.  A District Court judge held an evidentiary hearing, after which he issued detailed findings of fact and a memorandum and order allowing the motion.  The judge ruled that, although the Commonwealth had reasonable suspicion to conduct a patfrisk of the defendant and the backpack, there was inadequate evidence to justify the unzipping and search of the backpack.  The Commonwealth filed a motion to reconsider, which the judge denied.  The Commonwealth timely appealed from both the denial of the motion to suppress and the denial of the motion to

---

[5] The surveillance video reveals that approximately five to ten seconds elapsed between the time the detective unzipped the first compartment of the backpack to the time that the firearm was seen inside the second compartment.

reconsider. A single justice of the Supreme Judicial Court allowed the Commonwealth's application for interlocutory review.

Discussion. "In reviewing a ruling on a motion to suppress, we accept the judge's subsidiary findings of fact absent clear error but conduct an independent review of [the judge's] ultimate findings and conclusions of law" (quotation and citation omitted). Commonwealth v. Scott, 440 Mass. 642, 646 (2004). We "leave to the [motion] judge the responsibility of determining the weight and credibility to be given . . . testimony presented at the motion hearing." Commonwealth v. Meneus, 476 Mass. 231, 234 (2017), quoting Commonwealth v. Wilson, 441 Mass. 390, 393 (2004). However, we "make an independent determination of the correctness of the judge's application of constitutional principles to the facts as found." Commonwealth v. Mercado, 422 Mass. 367, 369 (1996).

The Commonwealth first contends that the judge erred in allowing the motion to suppress because the partially opened compartment of the defendant's backpack contained a readily observable large bulky object (the Xbox), such that it was evident, in the Commonwealth's view, that any further patfrisk of the backpack would have been futile. There is a measure of persuasiveness to the Commonwealth's argument here. The officers were confronted with a dangerous situation in real time and indeed had reasonable suspicion to believe the defendant was

armed and dangerous.[6]  "The touchstone of search and seizure law is reasonableness," Commonwealth v. Harris, 93 Mass. App. Ct. 56, 63 (2018), and "police officers need not gamble with their personal safety" when there are "legitimate safety concerns to justify [their actions]" (quotations and citation omitted). Commonwealth v. Demos D., 497 Mass. 78, 86 (2026).  Moreover, as the video shows, the officers acted in a professional manner, the detention of the defendant was brief, and the entire search of the backpack occurred in five to ten seconds.  In these circumstances, the officers' concerns were understandable.

Nevertheless, the issue before us is whether the officers' unzipping of the backpack was constitutionally permissible. This issue is controlled in material respects by Pagan, 440 Mass. at 68-73.  There, the Supreme Judicial Court upheld an officer's opening of a heavy backpack containing hard objects to search for potential weapons during a threshold inquiry without first conducting a patfrisk of the exterior of the backpack. Id. at 71-72.  Because containers "come in an infinite variety of sizes, shapes, and materials" the court "declin[ed] to impose a rule that would automatically require a preliminary patfrisk

---

[6] The defendant does not challenge the judge's conclusion that the officers had reasonable suspicion to stop and conduct a patfrisk of the defendant.  We further note that the Commonwealth does not contend that the officers had probable cause, prior to the unzipping of the backpack, to arrest the defendant.

of any and all containers prior to searching them for weapons during a Terry stop." Id. at 69. The court further reasoned that "[t]here are times when a patfrisk of a container will provide no useful information as to its contents, and will therefore do nothing either to confirm or to dispel an officer's suspicion that there is a weapon inside." Id. "At the opposite extreme [however] is a patfrisk of a small container made of soft material, as a patfrisk of such a container would unquestionably suffice to uncover the presence of any weapon or hard object or to confirm that no potential weapon is inside." Id. In either case, the protective measures taken by police must be "confined to what is minimally necessary to learn whether the suspect is armed and to disarm him once the weapon is discovered." Id., quoting Commonwealth v. Almeida, 373 Mass. 266, 272 (1977).

In the present case, the Commonwealth insists that the police did what was minimally necessary to confirm or dispel their suspicion. This argument fails where the Commonwealth did not present evidence supporting this contention. There was no testimony from any witness or other evidence to the effect that a patfrisk would have been inadequate to confirm the existence of a firearm within the backpack. The Commonwealth contends that it is readily apparent from the video that the Xbox was "protruding" from the backpack and thus any patfrisk would have

been futile.  We disagree.  It is not evident from the video,
standing alone, that a patfrisk of the backpack would have been
futile.  Although it is possible that the Xbox occupied enough
of the backpack such that a patfrisk would not have been
adequate here, the video alone does not support that conclusion.
In such circumstances, it was incumbent on the Commonwealth to
introduce additional evidence to demonstrate that a patfrisk
would have been inadequate.  This, it did not do.[7]

   This was also not a case where other "specific
circumstances" existed that justified the opening of the
backpack without first attempting a patfrisk of it.  See
Commonwealth v. Robinson, 83 Mass. App. Ct. 419, 430 (2013).
Robinson is instructive on this point.  There, we held that the
opening of a fanny pack without an initial patfrisk was
justified where a trooper testified that "the circumstances
deprived him of the opportunity to do so, and the evidence
support[ed] that contention."  Id.  In particular, we noted the
"rapidly deteriorating situation" wherein the defendant was

---

   [7] The Commonwealth's burden in this context is not onerous.
Had any officer testified, for example, that based on that
officer's observations or holding of the backpack, it was
evident that the Xbox occupied or filled the bulk of the
interior such that a patfrisk would not have been adequate to
establish whether or not a possible weapon was present, and had
the judge credited that testimony, the Commonwealth would have
sustained its burden.  Absent such evidence, however, Pagan, 440
Mass. at 69-72, mandates the result we reach here.  See
Commonwealth v. Rutledge, 86 Mass. App. Ct. 904, 905 (2014).

"actively resisting the patfrisk while screaming about racially motivated police conduct"; that an "extreme amount of other people" had begun to gather; and the troopers "still had to attend to the remaining passengers in the minivan and the driver they had arrested." Id. In "these specific circumstances, . . . it was reasonable to open the fanny pack without first attempting a more complete patfrisk of it." Id. Here, by contrast, the Commonwealth introduced no such comparable evidence. Thus, we cannot say that the judge erred as a matter of law in allowing the motion to suppress.

The Commonwealth also argues that conducting a patfrisk and manipulating the exterior of the backpack could have made the situation more dangerous because those actions could have resulted in the accidental discharge of the firearm.[8] Here again, the Commonwealth did not introduce any evidence at the motion hearing to support this contention. See Commonwealth v. Rodriguez, 74 Mass. App. Ct. 314, 315 (2009) (after defendant adequately raises constitutional issues Commonwealth has burden of producing evidence to show search fell within recognized exception to warrant requirement). There was no evidence suggesting that a gun might accidentally discharge during a patfrisk or that the officers had that safety concern at the

---

[8] The Commonwealth raised this argument for the first time in its motion to reconsider.

time.  Therefore, the argument is unavailing on the record

before us.

<u>Order allowing motion to
suppress affirmed</u>.
